IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. MICHAEL ANDREW HARRINGTON, § § § § § Plaintiff, § § v. § § ART INSTITUTES INTERNATIONAL § LLC, ART INSTITUTE OF HOUSTON § LLC, DC ART INSTITUTE OF § HOUSTON, LLC, & STUDIO § ENTERPRISE LLC, § § Defendants. § | CIVIL ACTION NO. 4:20-cv-02445 |

**DEFENDANTS THE ARTS INSTITUTES INTERNATIONAL, LLC
AND THE ART INSTITUTE OF HOUSTON, LLC'S MOTION TO DISMISS**

NOW COME Defendants The Arts Institutes International, LLC (incorrectly named in the Complaint as "The Art Institutes International LLC") ("**Ai Int'l**") and The Art Institute of Houston, LLC dba DC Art Institute of Houston, LLC (incorrectly named in the Complaint as "Art Institute of Houston LLC" and, separately, "DC Art Institute of Houston, LLC") ("**Ai Houston**"), and move the Court to dismiss Plaintiff Michael Andrew Harrington's ("**Plaintiff**" or "**Harrington**") Original Complaint[1] (the "**Complaint**") pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure, and respectfully show the Court as follows:

I. **SUMMARY**

Plaintiff purports to bring claims under the False Claims Act ("**FCA**"), but he fails to plead facts sufficient to constitute a cause of action upon which relief may be granted. Specifically, Plaintiff fails to state with particularity the circumstances constituting the fraud which Plaintiff

---
[1] Docket #1.

**DEFENDANTS THE ARTS INSTITUTES INTERNATIONAL, LLC
AND THE ART INSTITUTE OF HOUSTON, LLC'S MOTION TO DISMISS**—Page 1
FP 38822397.3

alleges Defendants committed. Moreover, Plaintiff can prove no set of facts in support of his FCA claim which would entitle him to relief from Defendants. Although Plaintiff alleges that Defendants committed statutory and/or regulatory violations, Plaintiff fails to allege anywhere in the Complaint that Defendants ever submitted false information to the United States Government so that a fraudulent claim for payment would be paid or approved by the Government. Accordingly, Plaintiff fails to state a claim for which relief may be granted and the Complaint should be dismissed in its entirety.

## II. BACKGROUND

Plaintiff filed this *qui tam* action on behalf of the United States under the False Claims Act, 31 U.S.C.§§ 3729-3733.[2] The United States has declined to intervene under 31 U.S.C. § 3730(b)(4)(B), leaving Harrington as the sole plaintiff in this action.[3]

In his Original Complaint, Plaintiff alleges that, in order to "be eligible to receive Title IV funds, a school must enter into a program participating agreement with the Department of Education" whereby the school "promises to comply with applicable federal statutes."[4] Plaintiff further alleges that Ai Houston and Defendants Art Institutes International LLC ("**Ai**") and Studio Enterprise LLC ("**Studio Enterprise**") (collectively, "**Defendants**")—either jointly or severally—executed such a program participating agreement with the Department of Education.[5]

Plaintiff sets forth in the Complaint allegations regarding the process by which Title IV funds are awarded and disbursed on behalf of students. First, a student must complete a Free Application for Federal Student Aid ("**FAFSA**").[6] Plaintiff claims that students "generally"

---

[2] Complaint ¶¶ 1, 36-53.
[3] Docket #4.
[4] Complaint ¶ 22.
[5] *See id.*
[6] *Id.*

submit their FAFSA application to the Department of Education before they have been accepted to any particular school.[7]  Once a student learns which schools have accepted him or her, the student logs back into the FAFSA website and selects the institution to which his or her federal student aid should be paid.[8]  Plaintiff specifically notes the college does not select itself through the FAFSA website; rather, "a student makes that selection for himself or herself."[9]  Plaintiff alleges that here, when a student visited Defendants to discuss enrolling in a degree program, Defendants asked the students to sign numerous documents including the FAFSA and "official loan requests that would direct federal funds into Defendants' accounts."[10]  Plaintiff also alleges that some of the students who Ai Houston accepted later enrolled in classes at the college, although others did not.[11]

In the Complaint, Plaintiff also discusses alleged terms of a "Consent Judgment" entered between the Department of Justice and Education Management Corporation ("**EDMC**"), a predecessor parent company to Ai Houston.[12]  In relevant part, Plaintiff alleges that all Defendants "were required under the terms of the Consent Judgment to provide students with an enrollment agreement for their signature."[13]  The enrollment agreement was, according to Plaintiff, "required to explain that students were entitled to a full refund if they withdrew within seven days of the first day of class at an in-person school or twenty-one days at an online school."[14]

---

[7] Complaint ¶¶ 22, 28.
[8] Complaint ¶ 28.
[9] *Id.*
[10] Complaint ¶ 29.
[11] *See* Complaint ¶ 29.
[12] *See* Complaint ¶¶ 14 (claiming EDMC acquired the Art Institutes system in 1969), 17 (alleging EDMC sold the Art Institutes to The Dream Center Foundation in 2017), 19 (claiming Education Principal Foundation acquired Ai Houston in January 2019); *see also* Complaint ¶¶ 15 (referring to a settlement agreement between the Dept. of Justice and EDMC in November 2015), 30 (referring to an undefined "Consent Judgment that EDMC entered into with the Department of Justice"); *accord* Complaint ¶ 31.  For purposes of this Motion, Ai Houston assumes the agreements referenced in Paragraphs 15, 30, and 31 of the Complaint are one and the same.
[13] Complaint ¶ 31.
[14] *Id.*

Plaintiff alleges that, on or about August 14, 2019, Plaintiff's supervisor Byron Chung ("**Chung**") provided Plaintiff a list of approximately 150 students who had submitted FAFSA applications and designated Ai Houston as the payee for their Title IV funds, but who had not formally enrolled with Defendants.[15] Chung purportedly instructed Plaintiff to contact these individuals and encourage them to execute an enrollment agreement because having the signed agreements "would protect Defendants if the federal government audited the school."[16] Plaintiff claims that he initially contacted two of the 150 students on the list, who both purportedly told Plaintiff that they did not enroll in classes with Defendants and did not plan to do so in the future.[17] Plaintiff reported this to Chung, who instructed Plaintiff to proceed with contacting the remaining 148 students.[18] Plaintiff never contacted another student on the list, and he never obtained any signatures on enrollment agreements for any of the 150 students.[19]

Plaintiff claims that on or about Friday, September 27, 2019—the last business day before classes began the following Monday—Plaintiff informed Chung that he had not continued calling the students on the list, and expressed his belief that Chung's request that Plaintiff "attempt[] to encourage the 150 students on the excel sheet to sign enrollment agreements" was "fraud on the federal government and on the students themselves."[20] Plaintiff alleges that the following Wednesday, October 2, 2019—*i.e.* two days after the enrollment period ended and classes had begun—Chung terminated Plaintiff's approximately 10-week employment as Director of Enrollment.[21] The proffered reason for Plaintiff's termination was that Plaintiff had, without

---

[15] Complaint ¶¶ 21, 23.
[16] Complaint ¶ 24; *accord* Complaint ¶ 27 (Chung told Plaintiff "the signed enrollment agreements were simply a formality to ensure that, if Defendants were audited by the federal government, Defendants could show that the students… were officially enrolled….").
[17] Complaint ¶ 25.
[18] *See* Complaint ¶ 26.
[19] Complaint ¶¶ 27-33.
[20] Complaint ¶ 34.
[21] Complaint ¶¶ 34-35; *see also* Complaint ¶ 21 (Plaintiff hired as Director of Enrollment on July 22, 2019).

authorization, used his access to confidential student data to send an email to former Art Institutes students approximately 2.5 weeks earlier.[22]

In the Complaint, Plaintiff alleges Defendants violated the False Claims Act in connection with the 150 prospective students who Plaintiff was allegedly instructed to contact. Plaintiff claims that Defendants collectively "received and retained approximately $2 million from the federal government and, specifically, the Department of Education's Title IV funding, that it was ineligible to receive."[23] Plaintiff alleges that Defendants were purportedly "ineligible to receive" these funds "[b]ecause Harrington never obtained any signatures on enrollment agreements from the 150 impacted students…."[24] Plaintiff further alleges that Defendants were not permitted to retain these funds because at least some of the students on the list provided by Chung to Plaintiff did not attend Ai Houston.[25]

### III. ARGUMENT AND AUTHORITIES

Even taking all the allegations in the Complaint as true, Plaintiff has not stated a cognizable claim under the False Claims Act. Plaintiff had pled no facts regarding any false or fraudulent claim for payment, nor has he pled that any of the Defendants ever created or used any false records in order to get a false or fraudulent claim paid or approved by the U.S. Government.

Moreover, Defendants' request that Plaintiff—the then-Director of Enrollment—reach out to prospective students to encourage them to enroll in classes with Defendants is by no means an instruction to commit an illegal act. Even if Defendants had terminated Plaintiff's employment

---

[22] Complaint ¶ 35.
[23] Complaint ¶ 33.
[24] *Id.*
[25] Complaint ¶ 23; *see also id.* at ¶ 31 (Defendants required to refund all or some financial aid for students who withdraw from and/or are not enrolled in classes).

**DEFENDANTS THE ARTS INSTITUTES INTERNATIONAL, LLC
AND THE ART INSTITUTE OF HOUSTON, LLC'S MOTION TO DISMISS—Page 5**

solely for his refusal to contact these individuals (which Ai Houston denies), it would not entitle Plaintiff to any relief.

Accordingly, Plaintiff's claims in the Complaint all fail as a matter of law and should be dismissed with prejudice.

### A.   STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," and must plead those facts with enough specificity "to raise a right to relief above the speculative level."[26]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[27]  "A claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'"[28]

Moreover, while a court must accept all of the plaintiff's allegations as true when ruling on a motion to dismiss, it is "'not bound to accept as true a legal conclusion couched as a factual allegation.'"[29]  A threadbare or formulaic recitation of the elements of a cause of action, supported by mere conclusory statements, will not suffice.[30]

Additionally, Rule 9(b) of the Federal Rules of Civil Procedure requires that a party alleging fraud "must state with particularity the circumstances constituting fraud..."[31]  To meet Rule 9(b)'s standards, the plaintiff's allegations must include the time, place, and contents of the

---

[26] Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007).
[27] Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).
[28] Harold H. Huggins Realty, Inc. v. FNC, Inc., 634 F.3d 787, 796 (5th Cir. 2011) (quoting Iqbal, 556 U.S. at 679).
[29] Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).
[30] Id.
[31] Fed.R.Civ.P. 9(b).

**DEFENDANTS THE ARTS INSTITUTES INTERNATIONAL, LLC
AND THE ART INSTITUTE OF HOUSTON, LLC'S MOTION TO DISMISS**—Page 6
FP 38822397.3

alleged false representations, as well as the identity of the person making the misrepresentation and what was fraudulently obtained.[32]

## B. PLAINTIFF HAS FAILED TO PLEAD A COGNIZABLE FALSE CLAIMS ACT CLAIM

### 1. FCA liability standards

In the instant action, there are two relevant portions of the False Claims Act: 31 U.S.C. § 3729(a)(1) and (2). Section 3729(a)(1) makes it unlawful for a person to "knowingly present[], or cause[] to be presented, to an officer or employee of the United States Government… a false or fraudulent claim for payment or approval…."[33] To establish liability under this Section, a plaintiff must show: (1) there was a false statement or fraudulent course of conduct; (2) made or carried out with the requisite scienter; (3) that was material; and (4) that caused the government to pay out money or to forfeit moneys due (*i.e.*, that involved a "claim," as defined by the False Claims Act).[34] Under Section 3729(a)(2), a person violates the FCA when he "knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government…."[35]

### 2. *Defendants did not violate § 3729(a)(1) because they did not present a false or fraudulent claim for payment or approval to the United States.*

A "claim" in the False Claims Act context "consists of a request or demand on the government for money that induces the government to disburse funds or 'otherwise suffer immediate financial detriment.'"[36] However, the False Claims Act is not designed to redress every

---

[32] Fearrington v. Boston Sci. Corp., 410 F. Supp. 3d 794, 807 (S.D. Tex. 2019) (citing Benchmark Electronics, Inc. v. J.M. Huber Corp., 343 F.3d 719, 724 (5th Cir. 2003)) (no cert.).
[33] 31 U.S.C. § 3729(a)(1).
[34] U.S. ex rel. Longhi v. United States, 575 F.3d 458, 467 (5th Cir. 2009) (cert. denied).
[35] 31 U.S.C. § 3729(a)(2).
[36] U.S. ex rel. Gay v. Lincoln Tech. Inst., Inc., 2003 WL 22474586, at *2 (N.D. Tex. Sept. 3, 2003), aff'd, 111 Fed. Appx. 286 (5th Cir. 2004) (quoting United States v. McNinch, 356 U.S. 595, 599, 78 S.Ct. 950, 2 L.Ed.2d 1001 (1958)).

**DEFENDANTS THE ARTS INSTITUTES INTERNATIONAL, LLC
AND THE ART INSTITUTE OF HOUSTON, LLC'S MOTION TO DISMISS**—Page 7
FP 38822397.3

kind of fraud practiced on the Government.[37]  Unless the alleged conduct involves a false or fraudulent "claim" under the FCA, it does not constitute a cognizable false claims cause of action, even if the alleged acts involve false statements or unlawful conduct.[38]

Here, Plaintiff alleges that Defendants "induced [potential] students to execute official loan requests… [and] then used these signed forms to request and receive Title IV funds under the student's name."[39]  Defendants then allegedly received the requested Title IV funds and retained those funds, regardless of whether the individual enrolled in classes.[40]

Notably, however, the Complaint does not allege that any of the loan requests allegedly submitted by Defendants to the Government contained false or fraudulent information.  Whether students were "induced" into executing the documents is immaterial; the "claim" itself (as defined by the FCA) must be false or fraudulent.  Likewise, it is immaterial whether Defendants retained those funds beyond the period they should have been refunded because the student had withdrawn or not enrolled.   A failure to make a proper is refund is, by definition, not a claim for payment; indeed, payment by the Government would already have been made at the point a refund would be owed.

Here, there simply is no evidence of a false or fraudulent claim made to the Government which induced the Government to make payment to Defendants.  Accordingly, Plaintiff fails to state a cognizable cause of action under Section 3729(a)(1) of the FCA.

---

[37] U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp., 20 F. Supp. 2d 1017, 1025 (S.D. Tex. 1998) (citing United States v. McNinch, 356 U.S. 595, 599, 78 S.Ct. 950, 2 L.Ed.2d 1001 (1958)).
[38] Lincoln Tech. Inst., Inc., 2003 WL 22474586, at *2.
[39] Complaint ¶ 29.
[40] *Id*.

> 3. *Defendants did not violate § 3729(a)(2) because they did not make or use a false record or statement to get a false claim paid by the Government.*

Plaintiff also alleges that Defendants violated the FCA by attempting to obtain enrollment agreements from individuals who were not attending the school.[41] However, Plaintiff admits that he never obtained any such signatures and, even if any of those 150 students had signed one, the enrollment agreements were not—and were not intended to be—submitted to the federal government.[42] Rather, Chung allegedly wanted the signed agreements on hand in case Defendants were audited by the federal government.[43] On its face, the Complaint contains no allegation that Defendants falsified any enrollment agreements.

Plaintiff also makes reference to alleged violations of a certain Consent Judgment entered between the U.S. Department of Justice and EDMC.[44] Specifically, Plaintiff claims that Defendants breached the terms of the Consent Judgment by (i) submitting one or more tickets to Ai Houston's internal IT department falsely claiming that a student had technical difficulties while completing an online orientation, and (ii) failing to provide enrollment agreements to the 150 prospective students for whom Defendants had allegedly received Title IV funds. Neither of these assertions contain any allegation regarding a false statement that was provided to the Government and upon which the Government relied when making a payment to Defendants. Even taking as true Plaintiff's allegation that Defendants breached the terms of the Consent Judgment, such is not a basis for a cognizable FCA cause of action. Again, the False Claims Act is not designed to redress every kind of violation practiced on the Government.[45]

---

[41] *See* Complaint ¶ 34 (claiming that Chung's request that Plaintiff "encourage the 150 students on the excel sheet to sign enrollment agreements… was fraud on the federal government...").
[42] *See* Complaint ¶ 33 (Plaintiff "never obtained any signatures on enrollment agreements from the 150 impacted students").
[43] Complaint ¶¶ 24, 27.
[44] Complaint ¶ 30.
[45] U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp., 20 F. Supp. 2d 1017, 1025 (S.D. Tex. 1998) (citing United States v. McNinch, 356 U.S. 595, 599, 78 S.Ct. 950, 2 L.Ed.2d 1001 (1958)).

Because there is no allegation in the Complaint that Defendants ever submitted to the federal government any falsified enrollment agreement (or any other documents) in order that the government would pay monies to Defendants, there is no claim Defendants violated Section 3729(a)(2) of the FCA.

## C. PLAINTIFF FAILS TO PLEAD FRAUD WITH THE REQUIRED PARTICULARITY

As discussed above, Plaintiff has generally alleged Defendants committed "fraudulent" conduct, but Plaintiff fails to plead such fraud allegations with the required particularity. Specifically, Rule 9(b) requires Plaintiff to indicate the time, place, and contents of the alleged false representations, as well as the identity of the person making the misrepresentation and what was fraudulently obtained.[46] Plaintiff has failed to meet this burden.

Plaintiff repeatedly alleges that "Defendants" collectively engaged in a given action, despite Defendants Ai Int'l., Ai Houston, and Studio Enterprise all being separate and distinct legal entities. Plaintiff even refers to the collective Defendants as "the school" and claims the Defendants together received Title IV funds for certain unenrolled students—despite the fact that Defendant Studio Enterprise is, according to Plaintiff, a "management and marketing" company, rather than an institute for higher education.[47]

With respect to each alleged fraudulent act alleged in the Complaint, Plaintiff either does not indicate any misrepresentation made, who made the alleged misrepresentation, when or where the misrepresentation was made, or what was obtained as a result of the alleged misrepresentation.

---

[46] Fearrington v. Boston Sci. Corp., 410 F. Supp. 3d 794, 807 (S.D. Tex. 2019) (citing Benchmark Electronics, Inc. v. J.M. Huber Corp., 343 F.3d 719, 724 (5th Cir. 2003)) (no cert.).

[47] See, e.g., Complaint ¶¶ 22 ("In signing such an agreement, the school (here, Defendants) promises to comply with all applicable federal statutes."), 24 (having signed enrollment agreements "would protect Defendants if the federal government audited the school"), 31 ("Title IV funds had been withdrawn and retained by Defendants in the students' names"), 33 ("Defendants knowingly received and retained approximately $2 million from the federal government and, specifically, the Department of Education's Title IV funding…"); see also id. at ¶ 7 (alleging Defendant Studio Enterprise "provided enrollment management and marketing to Ai Houston…").

Accordingly, Plaintiff fails to plead his claims of fraud with the particularity required by Rule 9(b) and such claims should be dismissed.

**D.  BECAUSE PLAINTIFF DID NOT REFUSE TO ENGAGE IN AN ACTIVITY THAT IS ILLEGAL, THERE CAN BE NO WRONGFUL RETALIATION**

In his final two causes of action, Plaintiff claims Defendants wrongfully terminated his employment in violation of the FCA and unspecified "Texas law," respectively.[48] However, even taking all allegations in the Complaint as true, Plaintiff still fails to state a claim for which relief may be granted under either theory.

*1.  Defendants did not violate FCA Section 3730(h).*

Section 3730(h) of the False Claims Act makes it unlawful to discriminate against an employee "in the terms and conditions of employment because of lawful acts done by the employee… in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter."[49]

However, as discussed *supra*, nothing that Defendants are alleged to have done or attempted to do constitute a violation of the FCA. Defendants did not present a false or fraudulent claim to the Government, nor did they make or use a false record or statement to get a false claim paid by the Government. None of the FAFSA application or loan information allegedly submitted by Defendants to the Government are alleged to contain any false statements.[50] Likewise, Defendants are not accused of creating any falsified documents in order to obtain funds from the Government. At most, Plaintiff accuses Defendants of attempting to obtain prospective students' signatures on enrollment agreements; Plaintiff does not accuse Defendants of fabricating any

---

[48] Complaint ¶¶ 47-57.
[49] 31 U.S.C. 3730(h)(1).
[50] *See* Complaint ¶ 29 (claiming Defendants "induced" students to execute loan applications that Defendants later submitted, but not alleging the applications themselves contained false information).

**DEFENDANTS THE ARTS INSTITUTES INTERNATIONAL, LLC
AND THE ART INSTITUTE OF HOUSTON, LLC'S MOTION TO DISMISS—Page 11**
FP 38822397.3

signatures on those forms.[51] Moreover, Plaintiff admits it was his understanding that those signatures would only have been presented to the Government in connection with a potential audit at some point in the future.[52] The enrollment agreements were not to be presented to the Government for payment, nor does the Complaint allege that presenting the enrollment agreements would have caused the Government to pay out money; indeed, Plaintiff acknowledges that Defendants received the complained-of Title IV funds without having obtained a single enrollment agreement from any of the 150 prospective students at issue.[53] Accordingly, the Government could not have relied on any false or fraudulent enrollment agreement in paying Title IV funds to Defendants.

Because Defendants never attempted to commit nor actually commit a violation of the FCA, Plaintiff never engaged in any acts to stop or prevent an FCA violation. Accordingly, Section 3730(h) does not apply and Defendants cannot be liable for a violation thereof.

   2.   *Plaintiff is not protected by* Sabine Pilot.

Plaintiff alternatively asserts a cause of action for "Termination for Refusal to Commit an Illegal Act under Texas Law."[54] Though inarticulately pled, Defendant Ai Houston interprets Plaintiff to assert a cause of action pursuant to the law of *Sabine Pilot,* created following the case of *Sabine Pilot Svs. v. Hauck*, 687 S.W.2d 733 (Tex. 1985). However, because Plaintiff would not have been subject to criminal penalties had he obtained the students' signatures on enrollment agreements, *Sabine Pilot* is inapplicable here.

---

[51] *See* Complaint ¶¶ 32-34 (claiming Chung repeatedly asked Plaintiff to contact prospective students to obtain their signatures on enrollment agreements, but that Plaintiff "never obtained any signatures on enrollment agreements from the 150 impacted students").
[52] *See* Complaint ¶¶ 24, 27.
[53] Complaint ¶ 33 ("Because Harrington never obtained any signatures on enrollment agreements from the 150 impacted students, Defendants knowingly received and retained approximately $2 million [in Title IV funding] from the federal government… that it was ineligible to receive.").
[54] Complaint p. 13.

**DEFENDANTS THE ARTS INSTITUTES INTERNATIONAL, LLC**
**AND THE ART INSTITUTE OF HOUSTON, LLC'S MOTION TO DISMISS**—Page 12
FP 38822397.3

In *Sabine Pilot*, the Texas Supreme Court held that that an employee may not be terminated for actually refusing to commit an illegal act demanded by an employer.[55] Furthermore, as the Fifth Circuit noted in *Guthrie v. Tifco Indus.*, this "narrow exception" to the employment-at-will doctrine "applies only to employees discharged for refusing to perform acts that carry criminal penalties."[56] In *Guthrie*, the plaintiff claimed he was ordered to violate unspecified customs regulations, but he failed to allege that the regulations carried criminal penalties.[57] "Consequently, he could not establish that he was discharged for refusing to perform an illegal act."[58]

Here, Plaintiff has cited no Texas or federal law that would have subjected him to criminal penalties for performing the allegedly requested act, *i.e.* convincing prospective students to sign an enrollment agreement. Moreover, even if Plaintiff held a good faith belief that he would be committing a crime, such belief is not enough for *Sabine Pilot* to apply.[59]

Because there is no evidence that Plaintiff was discharged by Defendants for refusing to commit a criminal act, Plaintiff's fifth cause of action fails as a matter of law.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff's claims all fail as a matter of law and should be dismissed. Accordingly, Defendants Ai Int'l. and Ai Houston respectfully request the following relief:

---

[55] Sabine Pilot, 687 S.W.2d at 735 (creating "a very narrow exception to the employment-at-will doctrine [that] covers only the discharge of an employee for the sole reason that the employee refused to perform an illegal act").

[56] 941 F.2d 374, 379 (5th Cir. 1991) (citing Hancock v. Express One Int'l, Inc., 800 S.W.2d 634 (Tex.App.—Dallas 1990, writ denied); *see also* Mayfield v. Lockheed Eng'g & Scis. Co., 970 S.W.2d 185, 187 (Tex. App.—Houston [14th Dist.] 1998, pet. denied) (holding "*Sabine Pilot* predicated wrongful discharge liability on a *refusal* to do an *illegal* act subjecting the employee to criminal penalties") (emphasis in original).

[57] *See generally id.*

[58] *Id.* at 379-80.

[59] *See* Williams v. Enserch Corp., 2000 WL 31802 at *3 (Tex.App.–Dallas, Jan. 18, 2000) (holding that a good-faith belief that the required conduct would constitute a violation of criminal law will not suffice under *Sabine Pilot*).

a. That Plaintiff's claims be dismissed with prejudice;

b. That Plaintiff not be awarded any relief or damages in connection with the Complaint;

c. That Defendants Ai Int'l. and Ai Houston recover their attorneys' fees and costs in connection with this matter, as allowed by law; and

d. That Defendants Ai Int'l. and Ai Houston be granted such other and further relief, in law or equity, as the Court deems just and proper.

Respectfully submitted,

/s/ Arthur V. Lambert
Arthur V. Lambert
Texas State Bar No. 11841250
Federal Bar No. 18785
ATTORNEY-IN-CHARGE
Theanna Bezney
Texas State Bar No. 24089243
FISHER & PHILLIPS LLP
500 N. Akard Street, Suite 3550
Dallas, TX  75201
Tel: (214) 220-9100
Fax: (214) 220-9122
alambert@fisherphillips.com
tbezney@fisherphillips.com

**COUNSEL FOR DEFENDANTS
THE ARTS INSTITUTES INTERNATIONAL, LLC
AND THE ART INSTITUTE OF HOUSTON, LLC
dba DC ART INSTITUTE OF HOUSTON, LLC**

## CERTIFICATE OF SERVICE

I hereby certify that on November 4, 2020, a copy of this instrument was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF System.

/s/ Arthur V. Lambert
Arthur V. Lambert