IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § <br> ex rel. MICHAEL ANDREW HARRINGTON, § <br> § <br> *Plaintiff,* § <br> § Civ. No. 4:20-cv-02445 <br> V. § <br> § JURY DEMANDED <br> ART INSTITUTES INTERNATIONAL LLC, § <br> ART INSTITUTE OF HOUSTON LLC, § <br> DC ART INSTITUTE OF HOUSTON, LLC, & § <br> STUDIO ENTERPRISE LLC § <br> § <br> *Defendants.* § | |

**RELATOR'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS**

Relator Michael Andrew Harrington ("Harrington") files this Response to Defendants The Arts Institutes International, LLC ("Ai) and The Art Institute of Houston, LLC d/b/a DC Art Institute of Houston, LLC ("Ai Houston") (collectively, "Defendants") Motion to Dismiss (DKT. NO. 9), and in support thereof, states as follows:

### I.   SUMMARY

This is a civil action for damages and civil penalties pursuant to the False Claims Act. Defendants knowingly requested and received at least $2 million dollars in Title IV financial aid funds from the United States Department of Education for students who never enrolled. When Relator Michael Andrew Harrington raised his concerns to his supervisor, Director of Operations Byron Chung, Chung immediately terminated him. Ai and Ai Houston received, and are believed to still receive, funds by falsifying records submitted to the federal government, refusing to return the money, and taking out loans in the name of students who have no intention of enrolling at Ai Houston.

1

Defendants now move to dismiss Harrington's lawsuit based, first, on a misrepresentation of the factual allegations and, second, on a misrepresentation of the law. For the reasons explained below, the Court should summarily deny Defendants' Motion to Dismiss.

## II. ARGUMENTS AND AUTHORITIES

### A. Standard of Review

When evaluating a Rule 12(b)(6) motion to dismiss, the court's task is "to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). Because this standard is so easily satisfied, "motions to dismiss under Rule 12(b)(6) are viewed with disfavor and are rarely granted." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009). However, even when a complaint fails to state a claim, the court should generally give the plaintiff an opportunity to amend the complaint under Rule 15(a) before dismissing the action with prejudice. *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002).

Claims brought under the False Claims Act must also comply with Rule 9(b), which requires a plaintiff to set forth the "who, what, when, where, and how" of the alleged fraud. *United States ex rel. Spicer v. Westbrook*, 751 F.3d 354, 365 (5th Cir. 2014)

### B. Harrington's False Act Claims Act Violations Easily Satisfy the Pleading Standards.

Defendants first argue that they did not violate the False Claims Act because they did not present a false or fraudulent claim. To make this argument, Defendants either purposefully misrepresents or misunderstands the basis of Harrington's claim.

"In determining whether liability attaches under the FCA, this court asks '(1) whether there was a false statement or fraudulent course of conduct; (2) made or carried out with the requisite scienter; (3) that was material; and (4) that caused the government to pay out money or to forfeit moneys due (i.e., that involved a claim).'" *Gonzalez v. Fresenius Med. Care N. Am.*, 689 F.3d 470, 475 (5th Cir. 2012). For the purposes of their motion, Defendants claim only that they did not present a false or fraudulent claim to the United Statements.

The core of Harrington's False Claims Act allegations is as follows: When a student visited Ai Houston to learn more about enrollment in a degree program, he or she met with a financial aid counselor to discuss their options. The counselors would ask the student to sign numerous agreements all at once, including a Master Promissory Note, Entrance Counseling, and the FAFSA. The counselors told the student that filling out all the commitment forms was simply a way for the student to understand what loans they would qualify for, but Defendants and the counselors knew this was not true. Although Defendants knew the student was not committing to attend Defendants' Houston campus, Defendants' counselors induced the students to execute official loan requests that would direct federal funds into Defendants' accounts. Defendants then used these signed forms to request and receive Title IV funds under the student's name. Some of these students eventually enrolled, but others never did—regardless of their enrollment status, however, Defendants received and retained the Title IV funds from the federal government. (DKT. NO. 1 ¶ 29).

Despite these clear allegations of a fraudulent course of conduct leading to Defendants seeking and retaining government funds they knew they were not entitled to keep, Defendants apparently believe that Harrington's claims stem from Defendants' failure to obtain fully executed enrollment agreements. This is plainly not so. Rather, Chung's request that Harrington

correct what Chung called a simple "paperwork error" simply *revealed* the fraud to Harrington. The "claim" under the False Claims Act was plainly made each occasion Defendants, through their admissions counselors, submitted requests for payment from the Department Education for students who had not yet (if ever) enrolled in Ai Houston and had no knowledge that funds had been withdrawn in their names and retained by Defendants.

Defendants also ignore that fraudulent inducement also leads to FCA violations. Specifically, liability attaches under § 3729(a)(1)(A) 'for each claim submitted to the Government under a contract which was procured by fraud, even in the absence of evidence that the claims were fraudulent in themselves." *United States ex rel. Bettis v. Odebrecht Contractors of Cal., Inc.*, 393 F.3d 1321, 1326 (D.C. Cir. 2005). Congress expressly recognized this theory when it amended the FCA in 1986, explaining that "each and every claim submitted under a contract . . . which was originally obtained by means of false statements or other corrupt or fraudulent conduct, or in violation of any statute or applicable regulation, constitutes a false claim." *Id.* (quoting S. Rep. No. 99-345, at 9 (1986)); *see also United States ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 384 (5th Cir. 2003) (recognizing FCA liability where "the contract under which payment is made was procured by fraud"). Defendants cannot escape liability by claiming that they simply submitted the loan application signed by the students. Instead, because Harrington alleges that the students were fraudulently induced to sign the applications, Defendants remain liable for their false claims.

Because Harrington has adequately alleged that Defendants submitted false claims for the United States for payment, the motion to dismiss must be denied.

**C.      Harrington's False Claims Act Allegations Easily Satisfy the Pleading Standards.**

Defendants next claim Harrington failed to satisfy the heightened pleading standard for fraud claims, including FCA violations, because Harrington did not identify the "who, what, when, where, and how of the alleged fraud." DKT. NO. 9, p. 10. Defendants made this argument despite the incredibly detailed allegations in the Complaint setting forth precisely this information:

> <u>Who</u>? President Byron Chung; Vice President for Enrollment Matthew Madrid; Defendants' Financial Aid Counselors. DKT. NO. 1, ¶¶ 23-27, 29-33.
>
> <u>What</u>? Falsely informing students that their signed Master Promissory note, Entrance Counseling, and FAFSA would be used only to determine loan qualification, when in fact Chung, Madrid, and the counselors all know that submission of these documents would in fact cause federal funds to flow into Defendants' bank accounts. Defendants then used the signed formed to request and receive Title IV funds in the students' names. Defendants also violated Title IV and Consent Judgement requirements for refunds and orientations. DKT. NO. 29-33.
>
> <u>When</u>? Summer 2019 extending into Fall 2019. DKT. NO. 1, ¶¶ 21-33.
>
> <u>Where</u>? On paper and in person (DKT. NO. 1, ¶¶ 29-33) at Ai's admissions office.
>
> <u>How</u>? In writing and verbally. (DKT. NO. 1, ¶¶ 29-33).

Based on these allegations, Harrington's Complaint clearly alleges the "who, what, when, where, and how of the alleged fraud." Defendants' motion to dismiss must be denied.

**D.      Harrington's FCA Retaliation Claim Easily Satisfies the Pleading Standard.**

Defendants next allege that they could not have retaliated against Harrington for raising FCA concerns because Defendants maintain they did not violate the FCA. For all the reasons discussed above, of course, Harrington has adequately pled FCA violations. Even if his concerns did not rise to the level of actual FCA violations, however, Defendants' motion to dismiss would easily fail because Defendants misstate the law.

5

Under the FCA's anti-retaliation provision, an employer is prohibited from retaliating against an employee for any "lawful acts done . . . in furtherance of an [FCA] action . . . or other efforts to stop . . . violations of [the FCA]." 31 U.S.C. § 3730(h)(1). "[A]n employee's actions must be aimed at matters that reasonably could lead to a viable claim under the Act," but the "employee need not 'have filed an FCA lawsuit or . . . have developed a winning claim at the time of the alleged retaliation.'" *U.S. ex rel. George v. Bos. Sci. Corp.*, 864 F. Supp. 2d 597, 604-05 (S.D. Tex. 2012) (quoting *U.S. ex rel. Karvelas v. Melrose-Wakefield Hosp.*, 360 F.3d 220, 236 (1st Cir. 2004)). To satisfy this standard, the employee's actions must be motivated by a "good faith" and objectively reasonable belief—i.e., "a reasonable employee in the same or similar circumstances might believe"—that her "employer is committing fraud against the government." *Id.* at 605; *see also Thomas v. ITT Educ. Servs., Inc.*, 517 F. App'x 259, 263 (5th Cir. 2013) (per curiam) ("A protected activity is one motivated by a concern regarding fraud against the government.").

Defendants' motion completely ignores this established good faith standard and falsely asserts that the retaliation claim should be dismissed "[b]ecause Defendants never attempted to commit nor actually commit [sic] a violation of the FCA." DKT. NO. 9 at 12. Harrington need not prove an actual FCA violation in order to prevail on his retaliation claim. Instead, his Complaint plainly meets the pleading requirements of an FCA retaliation claim, which require only that Harrington allege: "(1) the employee in good faith believes, and (2) a reasonable employee in the same or similar circumstances might believe, that the employer is committing fraud against the government." *Bos. Sci. Corp.*, 864 F. Supp. 2d at 605.

Harrington satisfies this standard. His complaint explains in great detail the fraud Defendants perpetuated on both students and the federal government. Defendants applied for

Title IV funds from the federal government for students who did not attend the school and had no idea that federal funds had been withdrawn in their name. Harrington has pled specific facts and made specific factual allegations that he in good faith believed, and a reasonable employee would also have believed, that Defendants were committing fraud against the government. Defendants cannot obtain dismissal of Harrington's retaliation claim by ignoring clearly established law.

E.  **Harrington's *Sabine Pilot* Claim Should Not Be Dismissed Because He Refused to Engage in Criminal Conduct.**

Defendants next confusingly claim that Harrington could not have been subject to criminal penalties if he had agreed to participate in Chung and Defendant's financial aid fraud. Perhaps Defendants are unfamiliar with 20 U.S.C. § 1097, which creates criminal penalties for a wide swath of financial aid fraud.

"Any person who knowingly and willfully embezzles, misapplies, steals, ***obtains by fraud***, ***false statement***, or forgery, or ***fails to refund any funds***, assets, or property provided or insured under [Student Assistance Programs] or attempts to so embezzle, misapply, steal, obtain by fraud, false statement or forgery, or fail to refund any funds, assets, or property" is subject to substantial criminal penalties. 20 U.S.C. § 1097(a). The same statute also forbids "destroy[ing] or conceal[ing] any records relating to the provision of [financial aid] assistance" "with intent to defraud the United States or prevent the United States from enforcing any right" related to financial aid can also be imprisoned for many years. § 1097(d). In other words, Harrington could have been subject to substantial criminal penalties had he continued Defendants' scheme to fraudulently obtain and retain student aid funds or even if he had attempted to alter Defendants' records (by, for example, obtaining students' signatures on enrollment agreements under false circumstances) to make it look like Defendants had not committed student aid fraud.

7

Defendants' professed belief that committing financial aid fraud is not a criminal act perhaps explains their FCA violations themselves. Because Harrington has plainly alleged that he would have been subject to criminal penalties had he participated in Defendants' fraudulent financial aid scheme, Defendants' motion to dismiss Harrington's *Sabine Pilot* claims must be denied.

## CONCLUSION

For the reasons described herein, Harrington respectfully requests that the Court deny Defendants' motion to dismiss in full. In the alternative, Harrington requests an opportunity to replead. Further, Harrington respectfully requests all additional relief to which he may be justly entitled.

Respectfully submitted,

/s/ Lawrence Morales II
LAWRENCE MORALES II
State Bar No. 24051077
ALLISON S. HARTRY
State Bar No. 24083149
**THE MORALES FIRM, P.C.**
6243 IH-10 West, Suite 132
San Antonio, Texas 78201
Telephone No. (210) 225-0811
Facsimile No. (210) 225-0821
lawrence@themoralesfirm.com
ahartry@themoralesfirm.com

***ATTORNEYS FOR PLAINTIFF***

## CERTIFICATE OF SERVICE

I hereby certify that on this the 13th day of November 2020, I served this document on all counsel of record through the Court's Electronic Filing System:

/s/ Lawrence Morales II
Lawrence Morales II