**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA ex rel.** | § | |
| **MICHAEL ANDREW HARRINGTON,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 4:20-cv-02445** |
| | § | |
| **ART INSTITUTES INTERNATIONAL** | § | |
| **LLC, ART INSTITUTE OF HOUSTON** | § | |
| **LLC, DC ART INSTITUTE OF** | § | |
| **HOUSTON, LLC, & STUDIO** | § | |
| **ENTERPRISE LLC,** | § | |
| | § | |
| *Defendants.* | § | |

**DEFENDANTS THE ARTS INSTITUTES INTERNATIONAL, LLC
AND THE ART INSTITUTE OF HOUSTON, LLC'S
<u>REPLY IN SUPPORT OF MOTION TO DISMISS</u>**

Arthur V. Lambert
Texas State Bar No. 11841250
Federal Bar No. 18785
ATTORNEY-IN-CHARGE
Theanna Bezney
Texas State Bar No. 24089243
FISHER & PHILLIPS LLP
500 N. Akard Street, Suite 3550
Dallas, TX  75201
Tel: (214) 220-9100
Fax: (214) 220-9122
*alambert@fisherphillips.com*
*tbezney@fisherphillips.com*

**COUNSEL FOR DEFENDANTS
THE ARTS INSTITUTES INTERNATIONAL, LLC
AND THE ART INSTITUTE OF HOUSTON, LLC
dba DC ART INSTITUTE OF HOUSTON, LLC**

## TABLE OF CONTENTS

I.  SUMMARY ............................................................................................................. 1

II. ARGUMENT AND AUTHORITIES.................................................................... 3

    A.  PLAINTIFF DOES NOT ALLEGE DEFENDANTS MADE A FALSE
        STATEMENT OF FACT. ............................................................................ 3

    B.  PLAINTIFF FAILS TO STATE WITH PARTICULARITY THE
        CIRCUMSTANCES CONSTITUTING THE ALLEGED FRAUD. ............... 6

        1.  Byron Chung's allegedly false representations.......................................... 7

        2.  Matthew Madrid's allegedly false representations ..................................... 8

        3.  Allegedly false representations by "Defendants' Financial Aid Counselors".............. 9

    C.  PLAINTIFF FAILS TO PLEAD A COGNIZABLE CLAIM FOR FCA
        RETALIATION................................................................................................ 10

    D.  PLAINTIFF FAILS TO ALLEGE HE WOULD BE SUBJECT TO CRIMINAL
        LIABILITY UNDER 20 U.S.C. § 1097. ...................................................... 12

III. CONCLUSION.................................................................................................... 14

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

Aquaplex, Inc. v. Rancho La Valencia, Inc., 297 S.W.3d 768 (Tex. 2009) ...................................4

Ashcroft v. Iqbal, 556 U.S. 662 (2009).......................................................................................12

Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).................................................................12

Benchmark Electronics, Inc. v. J.M. Huber Corp., 343 F.3d 719 (5th Cir. 2003))
(no cert.).............................................................................................................................6

Fearrington v. Boston Sci. Corp., 410 F. Supp. 3d 794 (S.D. Tex. 2019).....................................6

Fina Supply, Inc. v. Abilene Nat'l Bank, 726 S.W.2d 537 (Tex. 1987)....................................4, 5

Hart v. Bayer Corp., 199 F.3d 239 (5th Cir. 2000)........................................................................7

IAS Services Group, L.L.C. v. Jim Buckley & Associates, Inc., 900 F.3d 640 (5th
Cir. 2018) ......................................................................................................................6, 9

Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am., 341 S.W.3d 323
(Tex. 2011) .........................................................................................................................4

McCollum v. P/S Invs., 764 S.W.2d 252 (Tex.App.—Dallas 1988, writ denied).........................6

Paull v. Capital Res. Mgmt., 987 S.W.2d 214 (Tex.App.—Austin 1999, pet.
denied)............................................................................................................................5, 6

Prudential Ins. Co. of Am. v. Jefferson Assocs., Ltd., 896 S.W.2d 156 (Tex.1995)......................4

Robertson v. Bell Helicopter Textron, Inc., 32 F.3d 948 (5th Cir.1994)..............................11, 12

Sabine Pilot Service, Inc. v. Hauck, 687 S.W.2d 733 (1985).......................................................14

Trenholm v. Ratcliff, 646 S.W.2d 927 (Tex.1983)........................................................................5

Tuchman v. DSC Commc'ns Corp., 14 F.3d 1061, 1067 (5th Cir. 1994).......................................6

United States ex rel. George v. Boston Sci. Corp., 864 F. Supp. 2d 597 (S.D. Tex.
2012) .................................................................................................................................11

United States ex rel. Patton v. Shaw Servs., L.L.C., 418 Fed.Appx. 366 (5th Cir.
2011) ..............................................................................................................................9, 11

United States ex rel. Thompson v. Columbia/HCA Healthcare Corp., 20 F. Supp. 2d 1017 (S.D. Tex. 1998) ............................................................................12

United States ex rel. Willard v. Humana Health Plan or Texas Inc., 336 F.3d 375 (5th Cir. 2003) ..................................................................................................9

United States v. McNinch, 356 U.S. 595, 78 S.Ct. 950, 2 L.Ed.2d 1001 (1958) .........12

Williams v. Enserch Corp., 05-97-02071-CV, 2000 WL 31802 (Tex. App.— Dallas Jan. 18, 2000, pet. denied)) ..........................................................................14

Williams v. WMX Techs., Inc., 112 F.3d 175 (5th Cir. 1997) ......................................7

**Statutes**

20 U.S.C. § 1097 ..................................................................................................3, 12, 14

False Claims Act, 31 U.S.C. §§ 3729 - 3733 ...................................................... *passim*

**Other Authorities**

Federal Rules of Civil Procedure Rules 9(b) and 12(b)(6) .................................. *passim*

Federal Student Aid, an Office of the U.S. Dept. of Education, *available at* https://studentaid.gov/apply-for-aid/fafsa/filling-out (last visited November 11, 2020) ...............................................................................................................5

Federal Student Aid, an Office of the U.S. Dept. of Education, *available at* https://studentaid.gov/mpn/ (last visited November 11, 2020) .................................5

**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA ex rel.** | § | |
| **MICHAEL ANDREW HARRINGTON,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | **CIVIL ACTION NO. 4:20-cv-02445** |
| | § | |
| **ART INSTITUTES INTERNATIONAL** | § | |
| **LLC, ART INSTITUTE OF HOUSTON** | § | |
| **LLC, DC ART INSTITUTE OF** | § | |
| **HOUSTON, LLC, & STUDIO** | § | |
| **ENTERPRISE LLC,** | § | |
| | § | |
| *Defendants*. | § | |

**DEFENDANTS THE ARTS INSTITUTES INTERNATIONAL, LLC**
**AND THE ART INSTITUTE OF HOUSTON, LLC'S**
<u>**REPLY IN SUPPORT OF MOTION TO DISMISS**</u>

NOW COME Defendants The Arts Institutes International, LLC (incorrectly named in the Complaint as "The Art Institutes International LLC") ("**Ai Int'l**") and The Art Institute of Houston, LLC dba DC Art Institute of Houston, LLC (incorrectly named in the Complaint as "Art Institute of Houston LLC" and, separately, "DC Art Institute of Houston, LLC") ("**Ai Houston**"), and file this Reply in support of their Motion to Dismiss Plaintiff Michael Andrew Harrington's ("**Plaintiff**" or "**Harrington**") Original Complaint (Docket #1, the "**Complaint**") pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure, and respectfully show the Court as follows:

**I.    <u>SUMMARY</u>**

In their Motion to Dismiss (Docket #9, the "**Motion**"), Defendants Ai Int'l and Ai Houston demonstrate that Plaintiff's Complaint fails to plead facts sufficient to constitute a cause of action under the False Claims Act ("**FCA**") because Plaintiff (i) fails to state with particularity the

circumstances constituting the fraud which Plaintiff alleges Defendants committed and (ii) can prove no set of facts in support of his FCA claim which would entitle him to relief from Defendants.  In his Response to the Motion (Docket #12, the "**Response**"), Plaintiff claims that Ai Int'l, Ai Houston, and Studio Enterprise LLC ("**Studio Enterprise**") (collectively, "**Defendants**") each violated the FCA by "fraudulently inducing" potential students "to execute official loan requests that would direct federal funds into Defendants' accounts."[1]  Plaintiff claims that Defendants collectively submitted "these signed forms [to the Federal Government] to request and receive Title IV funds under the student's name" and thereafter "received and retained the Title IV funds" "regardless of [the students'] enrollment status."[2]

Plaintiff's FCA claims still fail, for two reasons: (1) the statements allegedly made by "Defendants' Financial Aid Counselors" were not actionable misrepresentations of fact; and (2) the Complaint fails to allege fraud with the required specificity.  Plaintiff claims in the Response that it is sufficient to simply allege that "Defendants' Financial Aid Counselors" made written and verbal false statements to some number of unidentified "students" between Summer and Fall 2019.[3]  However, such vague and generalized pleading does not satisfy the stringent requirements of Rule 9(b).

Plaintiff's wrongful termination causes of action also fail.  Plaintiff did not engage in activity protected by the FCA because the acts allegedly committed by Defendants do not constitute FCA fraud.  Plaintiff also claims that his employment termination violated the *Sabine Pilot* exception to the at-will employment doctrine because his termination was based, according

---

[1] Response at p.3.
[2] *Id.*
[3] *Id.* at p.5.

to Plaintiff, on his refusal to commit an illegal act; however, the only act Plaintiff allegedly refused would not have subjected him to criminal liability.  Therefore, *Sabine Pilot* does not apply.

## II.    ARGUMENT AND AUTHORITIES

Even taking all the allegations in the Complaint as true, the misrepresentations by "Defendants' Financial Aid Counselors" on which Plaintiff bases his FCA fraud claims are not actionable false statements of fact.  Moreover, Plaintiff fails to allege the specific details of the alleged fraud with the particularity required under Federal Rule of Civil Procedure 9(b).  As such, Plaintiff has not stated a cognizable claim under the False Claims Act.

Concomitantly, Plaintiff can plead no facts that would support his claim for unlawful FCA retaliation.  Further, because Plaintiff would not face criminal liability under 20 U.S.C. § 1097 for contacting potential students to obtain their signatures on enrollment agreements, Defendants' alleged termination of Plaintiff's employment because of his refusal to commit such acts would not be rendered unlawful by *Sabine Pilot*.

Accordingly, Plaintiff's claims in the Complaint all fail as a matter of law and should be dismissed.

## A.    PLAINTIFF DOES NOT ALLEGE DEFENDANTS MADE A FALSE STATEMENT OF FACT.

In the Response, Plaintiff alleges that his FCA claim in the Complaint is based upon a theory of fraudulent inducement, arising from "Defendants' Financial Aid Counselors" asking prospective students "to sign numerous agreements all at once" and telling the students "that filling out the commitment forms was simply a way for the student to understand what loans they would

qualify for…."[4]   Plaintiff claims "the counselors knew this was not true."[5]   However, the counselor's opinions about (i) whether a student would "understand what loans they would qualify for" as a result of completing the forms, or (ii) the legal effect of signing the forms at issue are not actionable misstatements of fact under Texas law.  Without any fraudulent statements, there can be no fraudulent inducement as alleged in the Response.

> The elements of fraud are:
>
> (1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury.[6]

Expressions of opinion are not representations of material fact, and thus cannot provide a basis for a fraud claim.[7]  In Texas, a representation regarding the legal effect of a document is a statement of opinion, not a statement of fact.[8]  The recognized exceptions to this general rule include circumstances where (i) there is a fiduciary or confidential relationship between the parties, or (ii) where a representation is made by a party having superior knowledge who takes advantage of another's ignorance.[9]  An additional exception exists where a representation regarding legal rights is made that was both intended and understood to be a representation of fact, but this exception does not apply if the parties are in an equal bargaining position and have equal access

---

[4] Complaint ¶ 29; Response at pp.3-5.  *See also* Complaint at pp.3-4 (repeating Complaint ¶ 29 and explaining that such allegations are "[t]he core of Harrington's False Claims Act allegations", and expressly denying that the enrollment agreements are a basis of Plaintiff's FCA claims but rather are how Plaintiff discovered the alleged fraud by the counselors).

[5] Complaint ¶ 29.

[6] Aquaplex, Inc. v. Rancho La Valencia, Inc., 297 S.W.3d 768, 774 (Tex. 2009) (per curiam).

[7] Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am., 341 S.W.3d 323, 337–38 (Tex. 2011) (citing Prudential Ins. Co. of Am. v. Jefferson Assocs., Ltd., 896 S.W.2d 156, 163 (Tex.1995)).

[8] *See* Fina Supply, Inc. v. Abilene Nat'l Bank, 726 S.W.2d 537, 540 (Tex. 1987).

[9] *Id.*

**DEFENDANTS THE ARTS INSTITUTES INTERNATIONAL, LLC AND THE ART INSTITUTE OF HOUSTON, LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS**—Page 4
FP 39120818.3

to legal advice.[10]  This is because under such circumstances each party has an opportunity to make

their own investigation and determination of the legal effect of their actions.[11]

Here, there is no allegation that the prospective students shared a "fiduciary or confidential

relationship" with the three Defendants or that the students were not in an equal bargaining position

with the financial aid counselors.  Likewise, there is no allegation in the Complaint that prospective

students did not have access to legal advice prior to executing any loan documents or that they

were deprived of all opportunity to make their own investigation and determine the legal effect of

executing the financial aid forms.[12]  Indeed, there is no claim the prospective students were, in

fact, ignorant of the effects of signing a FAFSA or Master Promissory Note, which are described

in detail on the Department of Education's publicly available website.[13]

Similarly, Plaintiff does not allege that Defendants had "special knowledge" of specific

facts underlying the legal effect of executing a FAFSA, Master Promissory Note, or other federal

loan forms.  "Special knowledge" in this instance means knowledge or information superior to that

possessed by the student and to which the student did not have equal access.[14]  Special knowledge

is not, however, synonymous with superior or special expertise.  Special knowledge is knowledge

of *specific facts* that underlie a false opinion and that can support a claim of affirmative

misrepresentation.[15]  Superior or special expertise is knowledge uniquely within the domain of a

---

[10] *Id.*
[11] *Id.*
[12] *See id.*
[13] *See* "Filling Out the FAFSA Form," Federal Student Aid, an Office of the U.S. Dept. of Education, *available at* https://studentaid.gov/apply-for-aid/fafsa/filling-out (last visited November 11, 2020) (explaining the FAFSA application process, including providing a link to a "FAFSA process graphic" that "[w]alks through the process of preparing for, completing, and submitting a FAFSA form [and] [i]ncludes info on what happens after the form is submitted"); *see also* "Master Promissory Note (MPN)," Federal Student Aid, an Office of the U.S. Dept. of Education, *available at* https://studentaid.gov/mpn/ (last visited November 11, 2020) (stating in the initial paragraph, "The Master Promissory Note (MPN) is a legal document in which you promise to repay your loan(s) and any accrued interest and fees to the U.S. Department of Education. It also explains the terms and conditions of your loan(s).").
[14] *See* Paull v. Capital Res. Mgmt., 987 S.W.2d 214, 219 (Tex.App.—Austin 1999, pet. denied).
[15] *See* Trenholm v. Ratcliff, 646 S.W.2d 927, 930 (Tex.1983).

particular field and is not actionable as an affirmative misrepresentation, even when coupled with an opinion that turns out to be wrong.[16] Although a university's financial aid counselors may be said to have special expertise in the field of federal student loans for higher education, the counselors' opinions regarding the legal effect of executing government documents is "not actionable as an affirmative misrepresentation."[17]

Because none of the available exceptions apply, the counselors' alleged representations regarding the effects of signing loan documents are statements of opinion, not actionable false statements of fact. Accordingly, Plaintiff's fraud claim based on these alleged statements fails as a matter of law and should be dismissed.

## B.   PLAINTIFF   FAILS   TO   STATE   WITH   PARTICULARITY   THE CIRCUMSTANCES CONSTITUTING THE ALLEGED FRAUD.

Rule 9(b) of the Federal Rules of Civil Procedure requires that a party alleging fraud "must state with particularity the circumstances constituting fraud..."[18] The purpose of this rule is to "provide defendants with fair notice of the plaintiffs' claims, protect defendants from harm to their reputation and goodwill, reduce the number of strike suits, and prevent plaintiffs from filing baseless claims and then attempting to discover unknown wrongs."[19] To meet Rule 9(b)'s standards, Plaintiff's allegations must include the time, place, and contents of the alleged false representations, as well as the identity of the person making the misrepresentation and what was fraudulently obtained thereby.[20] Anything less fails to provide defendants with adequate notice of

---

[16] *See* Paull v. Capital Res. Mgmt., 987 S.W.2d 214, 219-20 (Tex.App.—Austin 1999, pet. denied); McCollum v. P/S Invs., 764 S.W.2d 252, 255 (Tex.App.—Dallas 1988, writ denied).
[17] Paull v. Capital Res. Mgmt., 987 S.W.2d at 219-20.
[18] Fed.R.Civ.P. 9(b).
[19] IAS Services Group, L.L.C. v. Jim Buckley & Associates, Inc., 900 F.3d 640, 647 (5th Cir. 2018) (quoting Tuchman v. DSC Commc'ns Corp., 14 F.3d 1061, 1067 (5th Cir. 1994)).
[20] Fearrington v. Boston Sci. Corp., 410 F. Supp. 3d 794, 807 (S.D. Tex. 2019) (citing Benchmark Electronics, Inc. v. J.M. Huber Corp., 343 F.3d 719, 724 (5th Cir. 2003)) (no cert.).

the nature and grounds of the claim.[21]   A plaintiff pleading fraud must plead these specifics "before access to the discovery process is granted.[22]

In his Response, Plaintiff points to the allegations in Complaint that Byron Chung, Matthew Madrid, and "Defendants' Financial Aid Counselors" made written and verbal false statements to "students" sometime between Summer and Fall 2019.[23]   However, these claims are patently insufficient under Rule 9(b).

### 1. *Byron Chung's allegedly false representations*

Byron Chung is not alleged to be among "Defendants' Financial Aid Counselors," therefore the only statements by Mr. Chung alleged in the Complaint are regarding the intended purpose of asking Plaintiff to contact a list of 150 prospective students to obtain their signatures on enrollment agreements.[24]

Plaintiff asserts that Mr. Chung "continued to falsely claim that the signed enrollment agreements were simply a formality to ensure that, if Defendants were audited by the federal government, Defendants could show that the students (for whom Defendants had already received Title IV funds) were officially enrolled even though they never attended classes and had no idea federal funds had been withdrawn in their name."[25]

Assuming the signed enrollment agreements were not, in fact, going to be used in the event Defendants were subjected in the future to a government audit to "show that the students… were officially enrolled even though they never attended classes," Plaintiff's Complaint fails to allege what was fraudulently obtained as a result of Mr. Chung's alleged misrepresentations to Plaintiff.

---

[21] Hart v. Bayer Corp., 199 F.3d 239, 248 n. 6 (5th Cir.2000) (citing Tuchman v. DSC Communications Corp., 14 F.3d 1061, 1067 (5th Cir. 1994)).
[22] Williams v. WMX Techs., Inc., 112 F.3d 175, 177 (5th Cir. 1997).
[23] Response at p.5.
[24] *See* Complaint ¶¶ 23, 24, 26, 27, 32.
[25] Complaint ¶ 27.

Plaintiff admits that he never obtained any of the requested signatures, and he claims Defendants nevertheless received the Title IV funds at issue.[26]   Plaintiff does not claim any of the three Defendants have since been audited by the government, or that enrollment agreements for the alleged 150 potential students have been used in any way.

Because Plaintiff does not allege what Mr. Chung or any of the Defendants obtained by Mr. Chung's alleged misrepresentations, Plaintiff's Complaint is insufficiently particular in this regard, and he has therefore failed to state a cognizable claim for fraud arising from Mr. Chung's alleged statements.

### 2.    *Matthew Madrid's allegedly false representations*

Like the allegations against Byron Chung, Matthew Madrid is also not alleged to be among "Defendants' Financial Aid Counselors," therefore the only statements by Mr. Madrid alleged in the Complaint are that he "regularly submit[ted] a ticket to the IT department stating that the student attempted to access the online orientation but had technical difficulties and could not complete it.  However, that was false and Madrid knew it was false: Defendants enrolled students who had never even attempted to access the online orientation."[27]

Plaintiff's general allegation that the "tickets" containing Mr. Madrid's supposed false statements were submitted "regularly" to "the IT department" does not specifically allege when and to whom these statements were purportedly made, and whether the "tickets" were verbal, emailed, written on a form, or transmitted by another mode.  And, as with Plaintiff's claims regarding Mr. Chung's alleged misrepresentations, Plaintiff makes no allegation regarding what Mr. Madrid and/or one or more of the Defendants obtained as a result of Mr. Madrid's alleged

---

[26] *See* Complaint ¶ 33 (asserting that "Harrington never obtained any signatures on enrollment agreements from the 150 impacted students" and yet Defendants still "received and retained approximately $2 million from the federal government… that it was ineligible to receive.").
[27] Complaint ¶ 30.

misstatements to "the IT department."  Based on these allegations, Defendants are left to merely speculate as to how the claims about Mr. Madrid's purported statements are related in any way to Plaintiff's FCA claims regarding federal funding received for students who never enrolled with Defendants.[28]

Accordingly, Plaintiff's allegations regarding statements by Mr. Madrid should be dismissed because they do not "provide defendants with fair notice of the plaintiff['s] claims," as required by Rule 9(b).[29]

### 3.  *Allegedly false representations by "Defendants' Financial Aid Counselors"*

Lastly, Plaintiff claims in his Response that the Complaint alleges false representations were made by "Defendants' Financial Aid Counselors" to "students" regarding the effect of executing "numerous agreements," including "a Master Promissory Note, Entrance Counseling, and the FAFSA itself."[30]  However, Plaintiff does not name even one individual to whom these alleged misrepresentations were made, nor does he identify even one person who made such a misrepresentation.

The allegation regarding who specifically made these alleged misrepresentations is impermissibly vague.  Plaintiff does not name any individual who is accused of making these alleged false statements or provide sufficient detail in order that Defendants could determine the identity of such individual(s). It is unclear whether these "counselors" were allegedly employed by all three Defendants at the same time, or whether Ai Int'l, Ai Houston, and Studio Enterprise

---

[28] Although Plaintiff alleges in his Response that he is also alleging "Defendants violated Title IV and Consent Judgment Requirements," (Response at p.5), the Fifth Circuit has held, "The FCA is a fraud prevention statute, and not a general enforcement device for federal statutes, regulations and contracts. The FCA does not create liability for a contractor's breach of a contractual provision or regulation 'unless, as a result of such acts, the [contractor] knowingly asks the Government to pay amounts it does not owe.'" U.S. ex rel. Patton v. Shaw Services, L.L.C., 418 Fed. Appx. 366, 369 (5th Cir. 2011) (quoting United States ex rel. Willard v. Humana Health Plan or Texas Inc., 336 F.3d 375, 381 (5th Cir.2003)).

[29] *See* IAS Services Group, 900 F.3d at 647.

[30] Response at pp.3, 5 (citing Complaint ¶¶ 23-27, 29-33).

(a "management and marketing" company, according to Plaintiff)[31] are alleged to have employed one or more "Financial Aid Counselors" and each such counselor separately made the same misrepresentation.  It is equally unclear whether Plaintiff is alleging that each and all of "Defendants' Financial Aid Counselors" made the misrepresentations, or whether the representations were made by only certain individuals employed in that capacity.

Additionally, Plaintiff's claim that these misrepresentations were made to an unspecified number of unidentified "students" is wholly insufficient under Rule 9(b)'s pleading requirements. Plaintiff claims to have spoken directly to two prospective students on or about August 14, 2019, regarding enrollment with Ai Houston, but Plaintiff does not name or provide any other identifying information for these two individuals, nor does he specify whether they were among those "students" to whom the counselors allegedly made misrepresentations.[32]  Plaintiff also fails to provide any identifying information whatsoever regarding other prospective students, if any, to whom the alleged misrepresentations were made.

Because Plaintiff's allegations regarding "who said what to whom" with respect to the Financial Aid Counselors are so vague and non-specific, Defendants have no way of investigating these claims and defending against them.  Accordingly, Plaintiff fails to plead his fraud claims with the particularity required by Rule 9(b), and such claims should be dismissed.

## C.    PLAINTIFF FAILS TO PLEAD A COGNIZABLE CLAIM FOR FCA RETALIATION

In his Response, Plaintiff alleges that Defendants can be liable for FCA retaliation because Plaintiff "in good faith believes, and a reasonable employee in the same or similar circumstances might believe, that the employer is committing fraud against the government."[33]   However,

---

[31] Complaint ¶ 7.
[32] *See* Complaint ¶ 25.
[33] Response at p.6.

Plaintiff misstates the law in this regard. FCA retaliation can only exist where the act the employee "in good faith believes" the defendant committed would constitute an FCA violation, if that belief were correct. FCA retaliation does not exist simply because an employee believes *some type* of fraud has been committed against the government; to fall under the protection of the FCA, the fraud alleged must be a "false claim" as defined by the Act.[34]

To bring an FCA retaliation claim for his termination, a plaintiff is "required to show that he engaged in activity *protected under the [False Claims Act] statute*, that his employer knew he engaged in protected activity, and that he was discharged because of it."[35] Mere criticism of a defendant's business practices, without the employee "attempting to expose illegality or fraud *within the meaning of the FCA*, does not rise to the level of protected activity."[36] Thus, if a plaintiff is investigating any type of fraud or wrong against the federal government other than a "false claim" as defined by the FCA, the FCA does not apply. Stated another way, a plaintiff investigating non-FCA fraud cannot establish the first element of an FCA retaliation claim that "he engaged in activity protected under the [False Claims Act] statute."[37] Indeed, as recognized

---

[34] U.S. ex rel. George v. Boston Sci. Corp., 864 F. Supp. 2d 597, 605 (S.D. Tex. 2012) (holding "an employee's actions must be aimed at matters that reasonably could lead to a viable claim under the [False Claims] Act. The employee's actions must be aimed at matters demonstrating a distinct possibility of False Claims Act litigation.") (internal citations and quotations omitted) (collecting cases)). *See, e.g.*, United States ex rel. Patton v. Shaw Servs., L.L.C., 418 Fed.Appx. at 371–72 (where plaintiff-employee complained about "fraudulent construction mistakes" which allegedly rendered defendant's claims for payment false or fraudulent within the meaning of the FCA, court granted summary judgment for defendant on the grounds that plaintiff "produced no evidence regarding the presentment of any claim to the government that was false or fraudulent within the meaning of the FCA").

[35] U.S. ex rel. Patton, 418 Fed. Appx. at 371–72 (citing 31 U.S.C. § 3730(h); Robertson v. Bell Helicopter Textron, Inc., 32 F.3d 948, 951 (5th Cir.1994)) (emphasis added).

[36] *Id.* (emphasis added); *accord* U.S. ex rel. George v. Boston Sci. Corp., 864 F. Supp. 2d at 605 (holding "an employee's actions must be aimed at matters that reasonably could lead to a viable claim under the [False Claims] Act. The employee's actions must be aimed at matters demonstrating a distinct possibility of False Claims Act litigation.") (internal citations and quotations omitted) (collecting cases)).

[37] *See* U.S. ex rel. Patton, 418 Fed. Appx. at 371–72.

by this Court, the False Claims Act is not designed to redress every kind of violation practiced on the Government.[38]

  As set forth *supra* and in the Motion, what Plaintiff claims Defendants did here would not, under any set of facts, constitute a violation of the FCA.  Accordingly, without knowledge that Plaintiff was investigating FCA fraud, Defendants "could not possess the retaliatory intent necessary to establish a violation" of § 3730(h).[39]  Because there are no set of facts that would support Plaintiff's claim of FCA retaliation, Plaintiff's fourth cause of action should be dismissed.

## D.   PLAINTIFF FAILS TO ALLEGE HE WOULD BE SUBJECT TO CRIMINAL LIABILITY UNDER 20 U.S.C. § 1097.

  In the Complaint, Plaintiff claims that his employment was terminated in retaliation for his refusal to contact a list of 150 prospective students to obtain their signature on enrollment agreements.[40]  In the Motion, Defendants Ai Int'l and Ai Houston highlight that Plaintiff fails to make the required pleading that he would have been subjected to criminal liability in connection with those alleged acts.[41]  To attempt to correct this omission, Plaintiff alleges in the Response that he would have faced criminal penalties under 20 U.S.C. § 1097.  However, there is no set of facts that would entitle Plaintiff to relief under *Sabine Pilot* because Section 1097 is inapplicable here.

  While a court must accept all of the plaintiff's allegations as true when ruling on a motion to dismiss, it is "'not bound to accept as true a legal conclusion couched as a factual allegation.'"[42] A threadbare or formulaic recitation of the elements of a cause of action, supported by mere

---

[38] U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp., 20 F. Supp. 2d 1017, 1025 (S.D. Tex. 1998) (citing United States v. McNinch, 356 U.S. 595, 599, 78 S.Ct. 950, 2 L.Ed.2d 1001 (1958)).
[39] Robertson, 32 F.3d at 952.
[40] Complaint ¶¶ 34-35.
[41] Motion at p.12-13.
[42] Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

conclusory statements, will not suffice.[43] Here, Plaintiff merely recites the provisions of Section 1097(a), and asserts the conclusory allegation that he would have violated that Section had he obtained unenrolled students' signatures on enrollment agreements.[44]

In the Response, Plaintiff alleges that he "could have been subject to substantial criminal penalties" if he "knowingly and willfully embezzles, misapplies, steals, ***obtains by fraud, false statement***, or forgery, or ***fails to refund any funds***" provided under a Student Assistance Program, or if he attempts to do so.[45] The only allegedly unlawful act which Plaintiff claims he refused to commit is to contact a list of 150 unenrolled students for whom Defendants allegedly received Title IV funding and seek to obtain the individuals' signatures on an enrollment agreement.[46] Plaintiff is unambiguous in stating the enrollment agreements aren't the basis of Plaintiff's claim of FCA fraud, but that the agreements "simply *revealed*" the Financial Aid Counselors' fraudulent misrepresentations to prospective students regarding the effect of executing loan forms.[47] Plaintiff does not allege that he was at any time directed to make those fraudulent misrepresentations to prospective students regarding loan forms, or that he ever refused any such instruction.

Regarding the enrollment agreements, Plaintiff makes clear in his Complaint and Response that those agreements are separate from and/or immaterial to Defendants' receipt of the federal student loan funds at issue. Plaintiff avers that he never obtained signatures from any of the alleged 150 students, and yet Defendants purportedly received the government funding anyway.[48] In other words, whether Defendants obtained the signatures or not, the government funding was still issued. Similarly, there is no allegation or proof that Defendants relied on having a signed enrollment

---

[43] *Id.* (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).
[44] Response at p.7.
[45] Response at p.7 (emphasis in original).
[46] *See* Complaint ¶¶ 34-35.
[47] Response at pp.3-4.
[48] *See* Complaint ¶ 33, Response at pp.3-4.

**DEFENDANTS THE ARTS INSTITUTES INTERNATIONAL, LLC AND THE ART INSTITUTE OF HOUSTON, LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS—Page 13**
FP 39120818.3

agreement as a basis for refusing to refund any Title IV funds.  Again, Plaintiff claims that Defendants did not obtain signatures from the at-issue students, and nevertheless retained the federal loan funds received for those individuals.[49]  Accordingly, no efforts or acts by Plaintiff with respect to the enrollment agreements could have caused Defendants to obtain federal funds "by fraud, false statement, or forgery" or would have cause Defendants to "fail[] to refund any funds."[50]  Moreover, even if Plaintiff held a good faith belief that he would be committing a crime by obtaining the students' signed enrollment agreements, such belief is not enough for *Sabine Pilot* to apply.[51]

As such, Plaintiff has alleged no set of facts to support the claim that obtaining or seeking to obtain signatures on enrollment agreements would have subjected Plaintiff to criminal liability under 20 U.S.C. § 1097, and the Court should not accept Plaintiff's conclusory allegations to the contrary.  Because there are no set of facts to support Plaintiff's claim of unlawful termination for his refusal to commit an allegedly illegal act, Plaintiff's fifth cause of action should be dismissed.

### III.   <u>CONCLUSION</u>

For the foregoing reasons and those set forth in the Motion, Plaintiff's claims all fail as a matter of law and should be dismissed.  Accordingly, Defendants Ai Int'l. and Ai Houston respectfully request the following relief:

a.    That Defendants Ai Int'l.'s and Ai Houston's Motion to Dismiss be granted in its entirety;

b.    That Plaintiff's claims be dismissed with prejudice;

c.    That Plaintiff not be awarded any relief or damages in connection with the Complaint;

---

[49] Complaint ¶ 33.
[50] 20 U.S.C. § 1097(a).
[51] *See* Williams v. Enserch Corp., 05-97-02071-CV, 2000 WL 31802, at *3 (Tex. App.—Dallas Jan. 18, 2000, pet. denied) (citing Sabine Pilot Service, Inc. v. Hauck, 687 S.W.2d 733 (1985)) (holding that a good-faith belief that the required conduct would constitute a violation of criminal law will not suffice under *Sabine Pilot*).

**DEFENDANTS THE ARTS INSTITUTES INTERNATIONAL, LLC AND THE ART INSTITUTE OF HOUSTON, LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS—Page 14**
**FP 39120818.3**

d.      That Defendants Ai Int'l. and Ai Houston recover their attorneys' fees and costs in connection with this matter, as allowed by law; and

e.      That Defendants Ai Int'l. and Ai Houston be granted such other and further relief, in law or equity, as the Court deems just and proper.

Respectfully submitted,

*/s/ Arthur V. Lambert*
Arthur V. Lambert
Texas State Bar No. 11841250
Federal Bar No. 18785
ATTORNEY-IN-CHARGE
Theanna Bezney
Texas State Bar No. 24089243
FISHER & PHILLIPS LLP
500 N. Akard Street, Suite 3550
Dallas, TX  75201
Tel: (214) 220-9100
Fax: (214) 220-9122
alambert@fisherphillips.com
tbezney@fisherphillips.com

**COUNSEL FOR DEFENDANTS
THE ARTS INSTITUTES INTERNATIONAL, LLC
AND THE ART INSTITUTE OF HOUSTON, LLC
dba DC ART INSTITUTE OF HOUSTON, LLC**

## CERTIFICATE OF SERVICE

I hereby certify that on November 19, 2020, a copy of this instrument was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF System.

*/s/ Arthur V. Lambert*
Arthur V. Lambert